**22-12853**

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆◆

CARLOS RAMIREZ, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant,*

—v.—

THE PARADIES SHOPS, LLC, a Georgia limited liability company,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

## BRIEF FOR PLAINTIFF-APPELLANT

JOHN A. YANCHUNIS
RYAN D. MAXEY
KENYA J. REDDY
MORGAN & MORGAN P.A.
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505

*Attorneys for Plaintiff-Appellant*

22-12853 – *Carlos Ramirez v. The Paradise Shop, LLC*

---

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

---

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1-2(c), Appellant Carlos Ramirez respectfully submits the following Certificate of Interested Persons:

1. Bess, Dylan Artell (Counsel for Appellant)

2. Hall, Peter Nathaniel  (Counsel for Appellee)

3. Holland & Knight  (Counsel for Appellee)

4. Maxey, Ryan D.  (Counsel for Appellant)

5. Morgan & Morgan Complex Litigation Group (Counsel for Appellant)

6. Ramirez, Carlos (Appellant)

7. Reddy, Kenya J. (Counsel for Appellant)

8. Ross, Eleanor L. (District Court Judge)

9. The Paradies Shops, LLC (Appellee)

10. Yanchunis, John A. (Counsel for Appellant)

## STATEMENT REGARDING ORAL ARGUMENT

In light of varying decisions from the Northern District of Georgia concerning the issues raised in this Appeal, Appellant believes oral argument may assist the Court in resolving these issues.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT .................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF SUBJECT-MATTER AND APPELLATE
JURISDICTION ...............................................................................1

STATEMENT OF THE ISSUES ...............................................................2

STATEMENT OF THE CASE ...................................................................2

    I.    Factual Background ................................................................2

    II.    Procedural Background ...........................................................5

    III.    Standard of Review ...............................................................5

SUMMARY OF THE ARGUMENT ...........................................................6

ARGUMENT .........................................................................................7

    I.    THE DISTRICT COURT ERRED IN DISMISSING
        APPELLANT'S NEGLIGENCE CLAIM. ...........................................7

    II.    THE DISTRICT COURT ERRED IN DISMISSING
        APPELLANT'S BREACH OF IMPLIED CONTRACT
        CLAIM ..........................................................................20

CONCLUSION ....................................................................................22

CERTIFICATE OF COMPLIANCE ...........................................................23

CERTIFICATE OF SERVICE ..................................................................24

# TABLE OF CITATIONS

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................19

*Atlantic Coast Line Railroad Co. v. Godard*, 86 S.E.2d 311 (Ga. 1955) ...............13

*Baker v. Parkmobile, LLC*, No. 1:21-CV-2182-SCJ, 2022 WL 3704003
(N.D. Ga. Aug. 19, 2022) .........................................................18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................19

*Bowen v. Paxton Media Grp., LLC*, 2022 WL 4110319 (W.D. Ky. Sept. 8,
2022)...........................................................................21

*Bradley Center v. Wessner*, 296 S.E.2d 693 (Ga. 1982) ................................ 9, 10

*Castillo v. Seagate Tech., LLC*, No. 16 civ. 1958, 2016 WL 9280242
(N.D. Cal. Sept. 14, 2016) ................................................... 12, 21

*City of Rome v. Jordan*, 426 S.E.2d 861 (Ga. 1993) .................................7

*Classic Restorations, Inc. v. Bean*, 155 Ga. App. 694 (1980)................................20

*\*Collins v. Athens Orthopedic Clinic, P.A.*, 837 S.E.2d 310 (Ga. 2019) .................9

*Corona v. Sony Pictures Ent., Inc.*, No. 14-CV-09600 RGK (Ex), 2015 WL
3916744 (C.D. Cal. June 15, 2015) .....................................................12

*Dittman v. UPMC*, 196 A.3d 1036, 1048 (Pa. 2018)................................12

*Drummond v. City of Brunswick, Ga.*, 2005 WL 8157707
(S.D. Ga. Jan. 31, 2005) .........................................................19

*In re GE/CBPS Data Breach Litig.*, No. 20-cv-2903, 2021 WL 3406374
(S.D.N.Y. Aug. 4, 2021)...........................................................11

*J.M. Clayton Co. v. Martin,* 177 Ga. App. 228 (1985)...........................................20

*Longenecker-Wells v. Benecard Servs. Inc.*, 658 F. App'x 659 (3d Cir. 2016) ......20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...............................................19

*Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174
 (E.D. Mo. Aug. 3, 2021) .......................................................................................21

*\*McConnell v. Dep't of Labor*, 828 S.E.2d 352 (Ga. 2019) ..................... 8, 9, 10, 14

*McKenzie v. Allconnect, Inc.,* 369 F. Supp. 3d 810 (E.D. Ky. 2019) .............. 11, 21

*Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279 (11th Cir. 2010) ...................19

*\*Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360
 (N.D. Ga. 2021) ...................................................................................... *passim*

*Rasnick v. Krishna Hosp., Inc.*, 713 S.E.2d 835 (Ga. 2011) ....................................7

*Roberts v. Florida Power & Light Co.*, 146 F.3d 1305 (11th Cir. 1998) .................6

*Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739 (S.D.N.Y. 2017)...... 12, 21

*\*Sheffler v. Americold Realty Tr.*, No. 1:21-CV-1075-TCB,
 2022 WL 1815505, (N.D. Ga. Jan. 19, 2022) ........................................ 14, 15, 20

*Smith v. United States*, 873 F.3d 1348 (11th Cir. 2017)...........................................7

*Tatum v. Moss*, 58 Ga. App. 434, 198 S.E. 814 (1938) ...........................................20

*U.S. v. Baxter Intern. ., Inc.*, 345 F.3d 866 (11th Cir. 2003) ..................................19

**RULES**

Fed. R. Civ. P. 8(a)..................................................................................................19

## STATEMENT OF SUBJECT-MATTER AND
## APPELLATE JURISDICTION

The district court has subject matter and diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), as this is a class action wherein the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Appellee.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as this is an appeal from a final decision of the district court, specifically the district court's Order granting Appellee's Motion to Dismiss the Complaint.

The district court entered its Order granting the motion to dismiss on July 27, 2022 and the Judgment was entered on the same day. Appellant timely filed his Notice of Appeal on August 26, 2022. *See* Fed. R. App. P. 4.

## STATEMENT OF THE ISSUES

1. Did the district court err in dismissing Appellant's claim for negligence on the basis that Appellee did not owe Appellant and Class Members a duty of care?

2. Did the district court err in dismissing Appellant's breach of implied contract claim on the basis that Appellant did not allege how Appellee manifested an intent to provide data security as a part of its employment agreement?

## STATEMENT OF THE CASE

### I. Factual Background

This case arises out of an entirely foreseeable—and wholly preventable—data breach (the "Data Breach") that compromised the names and social security numbers of more than 76,000 former and current employees of Appellee, The Paradies Shops, LLC ("Appellee" or "TPS").

According to its website, TPS has "a retail and dining presence of 850 stores and 170 restaurants and bars in more than 100 airports." ECF 1, ¶ 2.[1] To obtain employment with TPS or companies affiliated with TPS, Appellant Carlos Ramirez ("Appellant" or "Ramirez") and Class Members were required to provide certain PII to Defendant, including their names and social security numbers. *Id.* ¶ 23.

---

[1] As required by 11th Cir. R. 28-5, reference to the record in this brief are to the ECF document number in the district court and to the page number in the heading generated by the ECF system, except where reference can be made to a specific paragraph.

In the course of and after providing employment to Ramirez and Class Members, TPS maintained its employees' PII on its servers and within its data infrastructure. *Id.* ¶¶ 36, 38-39. By providing employment and hosting employees' PII on its servers, TPS undertook legal duties to maintain the PII entrusted to it safely, confidentially, and in compliance with all applicable laws. *Id.* ¶¶ 9, 25, 40.

From October 8 to 13, 2020, TPS's internal administrative system was accessed by an unknown, unauthorized actor via a ransomware attack. *Id.* ¶ 3. On or around October 14, 2020, reports of the Data Breach began surfacing on the Internet, stating that the ransomware attack had been performed by the "REvil" ransomware group. *Id.* ¶ 5. TPS engaged a cybersecurity firm to investigate the incident. *Id.* ¶ 27. The investigation determined that the names and social security numbers of Ramirez and Class Members were in files that may have been accessed during the attack. *Id.* On or around June 30, 2021—more than eight months after reports about the Data Breach surfaced on the internet—TPS began notifying Ramirez and Class Members of the Data Breach. *Id.* ¶ 7. On or around July 2, 2021, TPS began notifying various states Attorneys General of the Data Breach. *Id.* ¶ 8. In its Notice of Data Incident sent to Ramirez and Class Members, TPS stated it was "notifying you so that you may take further steps to protect your information, should you feel it appropriate to do so." *Id.* ¶ 27. TPS offered Ramirez and Class Members 12 months access to credit monitoring and identity protection services. *Id.*

Ramirez is a former employee of Hojeij Branded Foods, which was acquired by TPS in or around November 2018. *Id.* ¶¶ 61-62. As a condition of his employment, Ramirez provided his PII to Hojeij, including his name and Social Security number. As part of its acquisition of Hojeij, TPS acquired the PII of Hojeij's current and former employees and retained that information in its internal, administrative system. *Id.* ¶¶ 61-63.

Although Ramirez has historically been careful about sharing his PII and has taken efforts to protect it (*id.* ¶¶ 68-69), he experienced injury following the Data Breach when one or more unknown and unauthorized individuals filed claims for Pandemic Unemployment Assistance using his name and Social Security number. *Id.* ¶ 65. On February 5, 2021, Ramirez received notice of the unauthorized claim from the State of Rhode Island Department of Labor and Training. *Id.* ¶ 64. Three months later, he received notice of a similar unauthorized claim from the Commonwealth of Kentucky Office of Unemployment Insurance. *Id.* ¶ 65.

As a result of the Data Breach, and in light of the two incidents of attempted identity theft that have already taken place, Ramirez and Class Members face a present and continuing risk of fraud and identity theft and a substantial risk of targeting for present and continuing fraud and other illegal schemes. *Id.* ¶ 10, 46, 48, 54-55, 59. To protect themselves, Ramirez and Class Members have spent

considerable time, *inter alia*, verifying the Notice of Data Incident and self-monitoring their accounts. *Id.* ¶¶ 67, 71-73, 121, 130.

## II.  Procedural Background

On September 10, 2021 filed his complaint, asserting claims for negligence, breach of implied contract, invasion of privacy, and breach of confidence. ECF 1. On October 4, 2021, TPS filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim for which relief may be granted. ECF 8. Ramirez filed a response in opposition to the motion on October 25, 2021. ECF 12. In the response, Ramirez withdrew his claims for invasion of privacy and breach of confidence. TPS filed a reply in support of its motion on November 15, 2021. ECF 14.

On July 27, 2022, the district court entered an Order finding that Ramirez had standing to bring his lawsuit, but that he failed to adequately allege his negligence and breach of implied contract claims. ECF 15. The district court thus ordered the dismissal of the complaint and directed the Clerk to close the case. *Id.* On the same day, the Clerk entered judgment dismissing this action. ECF 16. Ramirez filed his Notice of Appeal on August 26, 2022. ECF 17.

## III.  Standard of Review

This Court conducts a *de novo* review of "a district court's dismissal of a complaint for failure to state a claim upon which relief could be granted, accepting

the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998).

## SUMMARY OF THE ARGUMENT

The district court improperly dismissed Appellant's claims for negligence and breach of implied contract. Although courts around the country recognize an employer's duty to protect their employees' sensitive personal information when they collect that information as a condition of employment, the district court's ruling would enforce that duty only when plaintiffs allege a specific threat to the employer's particular industry. As the threat of data breaches to companies that collect personal information is well-known, there is no justification for letting employers evade liability for not sufficiently protecting their employees' personal information on an industry-specific basis.

Similarly, when an employer collects its employees' personal information as a condition of employment, it gives rise to an implied contract to protect that information. Furthermore, breach of implied contract claims are highly factual and generally not appropriate for resolution at the pleading stage.

This Court should reverse the district court's Order and remand this case for further proceedings.

## ARGUMENT

In its Order dismissing the Complaint, the district court correctly found Ramirez had Article III standing to bring his claims and had sufficiently alleged injury-in-fact based on the theft of his PII during the TPS ransomware attack and the subsequent misuse of his PII. But, turning to TPS's Rule 12(b)(6) challenge, the district court erroneously determined that Ramirez failed to state claims for negligence and breach of implied contract. Respectfully, Ramirez contends that these conclusions were error.

## I.    THE DISTRICT COURT ERRED IN DISMISSING APPELLANT'S NEGLIGENCE CLAIM.

Under Georgia law, a negligence claim has four elements: "the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty." *Rasnick v. Krishna Hosp., Inc.*, 713 S.E.2d 835, 837 (Ga. 2011) (citation omitted). "The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care." *Smith v. United States*, 873 F.3d 1348, 1352 (11th Cir. 2017) (quoting *City of Rome v. Jordan*, 426 S.E.2d 861, 862 (Ga. 1993)).

In its motion to dismiss, TPS argued it owed no duty of care to protect Ramirez's PII because Ramirez provided his PII to his previous employer HBF—which was later acquired by TPS—and not to TPS directly. The district court

rejected that argument (*see* ECF 15 at 19 n.5), and instead focused its analysis of the duty of care on whether the Data Breach was foreseeable. TPS argued it had no duty to protect Ramirez's PII because Georgia law does not recognize a common law duty to safeguard PII. TPS relied upon the Georgia Supreme Court's decision in *McConnell v. Dep't of Labor*, 828 S.E.2d 352 (Ga. 2019), contending that decision rejected the notion of a duty to protect personal information under Georgia law. In *McConnell*, the plaintiff filed a class action lawsuit against the Georgia Department of Labor after a Department employee inadvertently sent an email including a spreadsheet containing the private information of individuals who had applied for unemployment benefits and other services from the Department. *Id.* at 356. In addition to other claims, the plaintiff asserted a negligence claim based on the disclosure of his information. *Id.* In its opinion, the Georgia Supreme Court affirmed the Georgia Court of Appeals' ruling that the plaintiff's negligence claim failed because he had not shown that the Department owed him or the class members a duty to protect their private information. *Id.* at 358.

Defendants in data breach cases in Georgia courts routinely rely on *McConnell* for the proposition that Georgia law does not recognize a common law duty to protect personal information. However, *McConnell* was decided on narrower grounds than many defendants acknowledge; the Georgia Supreme Court did not find that there is no duty to protect personal information at all, but only that no such

duty arose from the two sources the plaintiff relied upon to support his claim: (1) the purported duty "to all the world not to subject [others] to an unreasonable risk of harm" that was articulated in *Bradley Center v. Wessner*, 296 S.E.2d 693 (Ga. 1982) and is now overruled; and (2) O.C.G.A. §§ 10-1-910 and 10-1-393.8. The *McConnell* Court explicitly left open the possibility that a duty to safeguard personal information could arise under different factual or legal circumstances. *Id.* at 358 n.5.

The Georgia Supreme Court made clear that *McConnell* did not foreclose the existence of a duty to protect personal information in *Collins v. Athens Orthopedic Clinic, P.A.*, 837 S.E.2d 310 (Ga. 2019). In *Collins*, the court overturned the lower courts' dismissal of the plaintiffs' claims in a data breach case. The plaintiffs alleged that an anonymous hacker stole the PII, including Social Security numbers, addresses, birth dates, and health insurance details, of at least 200,000 patients of Athens Orthopedic Clinic from the Clinic's computer databases. *Id.* at 311. In overturning the lower courts' dismissal of plaintiffs' negligence claims, the *Collins* specifically declined to extend the lower court's ruling on the duty issue in *McConnell* to a negligence claim in circumstances where a cybercriminal steals a health care provider's patients' sensitive personal data. *Id.* at 317. The court cited at "persuasive" authority Judge Thrash's decision in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295 (N.D. Ga. 2019), which predated *McConnell* by a few months. In *Equifax* Judge Thrash explained at length why,

9

notwithstanding the Georgia Court of Appeal's underlying decision in *McConnell* (later affirmed by the Georgia Supreme Court), a duty of care arises where a defendant "knew of a foreseeable risk to its data security systems but failed to implement reasonable security measures." *Id.* at 1325.

Accordingly, in light of *Collins*, *McConnell* is a decision that must be cabined to its narrow issue—whether a Georgia state agency owed a duty to safeguard personal information under *Bradley Center* or two specific Georgia statutes. *Collins* implicitly presumes such a duty and leaves it for the Georgia legislature to state otherwise. *Id.* at 316 n.7 ("traditional tort law is a rather blunt instrument for resolving all of the complex tradeoffs at issue in a case such as this, tradeoffs that may well be better resolved by the legislative process.").

The limits of the *McConnell* holding were further analyzed in *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360 (N.D. Ga. 2021). In *Purvis*, Judge May, after an extensive analysis of *Collins*, rejected the defendant's argument that *McConnell* forecloses the existence of a duty to protect personal information under Georgia law. Judge May found that the defendant healthcare company owed the plaintiffs—patients and employees of a healthcare provider—a duty to safeguard their PII based on the defendant's alleged knowledge of the foreseeable risk of a data breach and the resulting exposure of the plaintiffs' information. *Id.* at 1369. The plaintiffs alleged that the threat of cyberattacks and data breaches to healthcare

providers was widely and publicly known, and therefore the defendant should have known of the high risk of a data breach, "but nevertheless failed to properly guard against this foreseeable risk by implementing reasonable security measures, which ultimately led to Plaintiffs' injuries as a result of the Data Breach." *Id.* As Judge May explained:

> It also follows as a matter of common sense that, when patients and employees are required to turn over PII and PHI as a condition of medical care and employment, the entity receiving that information has some baseline obligation to adopt reasonable precautions to guard against known or reasonably foreseeable threats to the security of that information.

*Id.* at 1370. The same rationale applies here. Ramirez, as a condition of his employment with TPS was required to provide TPS with his sensitive PII. He relied on TPS to keep his PII confidential and secure, and TPS had a duty to adopt reasonable measures to protect his PII.

Across the country, other courts have repeatedly found that when employees provide their PII to employers as a condition of employment, the employers owe their employees a duty of reasonable care to protect that PII. *See In re GE/CBPS Data Breach Litig.*, No. 20-cv-2903, 2021 WL 3406374, at *8 (S.D.N.Y. Aug. 4, 2021) (employers have a duty to take reasonable measures to protect PII that they require from their employees where the safety of the data is almost entirely out of the employee's hands); *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 818 (E.D. Ky. 2019) (under Kentucky and Utah law) ("The Plaintiffs have provided sufficient

11

information in the complaint to demonstrate that they were obligated to provide sensitive personal information to Allconnect as a condition of their employment. As a result, while Allconnect may not have had a duty to protect its employees from unknown or unforeseen third-parties, Allconnect did have a duty to prevent foreseeable harm to its employees and, as part of that duty, had a duty to safeguard the sensitive personal information of its employees from unauthorized release or theft."); *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 748 (S.D.N.Y. 2017) ("[E]mployers have a duty to take reasonable precautions to protect the PII that they require from employees. Employees ordinarily have no means to protect that information in the hands of the employer, nor is withholding their PII a realistic option."); *Castillo v. Seagate Tech., LLC*, Case No. 16-cv-01958-RS, 2016 WL 9280242, at *3 (N.D. Cal. Sept. 14, 2016) (concluding that employer had a duty to protect the personal identifying information of its employees); *Corona v. Sony Pictures Ent., Inc.*, No. 14-CV-09600 RGK (Ex), 2015 WL 3916744, at *5 (C.D. Cal. June 15, 2015) (denying motion to dismiss plaintiffs' negligence claim regarding the employer's alleged duty to "maintain adequate security measures" to safeguard plaintiffs' personal information); *Dittman v. UPMC*, 196 A.3d 1036, 1048 (Pa. 2018) (holding data breach was "within the scope of the risk" created by the employer in requiring that employees provide their PII).

Notably, in *Purvis*, the court found a duty of care could be established based on "long-recognized negligence principles articulated in Georgia law." 563 F. Supp. 3d at 1369. It specifically noted the case *Atlantic Coast Line Railroad Co. v. Godard*, 86 S.E.2d 311 (Ga. 1955), in which a railroad employee was required to work through the night in a building in an isolated part of the defendants' railyard, frequently opening the door to deliver messages to other workers. *Godard*, 86 S.E.2d at 315. The employee was attacked one night and severely injured when she opened the door to the building while performing her job. *Id.* The Georgia Supreme Court found that the defendants owed her a duty of care based on the foreseeability of this harm occurring:

> The petition in this case, which alleged that the defendants well knew that dangerous, reckless, and lawless characters and persons who were strangers frequented the premises described during the nighttime[ ] ... was sufficient to charge the defendants with the duty to anticipate the criminal act alleged, and to exercise ordinary care to protect its employees therefrom.

*Id.* As Georgia law recognizes an employer's duty of care to protect its employees from foreseeable physical threats, there is no reason to believe—in our increasingly digital world—that it would not recognize an employer's duty to protect its employees from foreseeable digital threats like the ever-present danger of data breaches.

In its Order, the district court acknowledged Judge May's holding that a duty to protect personal information can be found based on the foreseeability of a data

breach. ECF 15 at 15-16. But it contrasted *Purvis* with another recent Northern District of Georgia decision, *Sheffler v. Americold Realty Tr.*, No. 1:21-CV-1075-TCB, 2022 WL 1815505, *5-6 (N.D. Ga. Jan. 19, 2022). In *Sheffler* the district court found that the plaintiffs' allegations of foreseeability—which are substantially identical to the allegations of foreseeability in this case[2]—were not "similarly specific" to those in *Purvis* and thus did not sufficiently allege that the ransomware attack in that case was foreseeable enough to give rise to a duty of care to protect the plaintiffs' personal information.

The *Sheffler* court acknowledged that the plaintiffs in that case—employees of Americold whose PII had been disclosed and misused following a ransomware attack—included allegations of foreseeability in their complaint. But the court found that the plaintiffs did "not provide any factual allegations to plausibly support a conclusion that Americold had reason to be on guard for this type of ransomware attack" or that "Americold's type of business had cause to be particularly on guard against such an attack." 2022 WL 1815505 at *6. The *Sheffler* court thus concluded that the plaintiffs' allegations of foreseeability failed to bring this case outside of *McConnell's* holding and within the holding of *Purvis*.

---

[2] The Appellants in *Sheffler* are represented by the same counsel as Ramirez. *Sheffler* is currently on appeal before this Court. *See Sheffler v. Americold Realty Tr.*, No. 22-11789.

Finding *Sheffler* persuasive, the district court in this case agreed that the foreseeability of a ransomware attack turns on whether "the threat of cyberattacks and data breaches was especially well-known to Defendant or Defendant's type of business." ECF 15 at 17. But such a requirement makes no logical sense. As noted above, courts around the country have found that employers owe a duty of care to protect their employees' PII because withholding their PII is not a realistic option for employees and the employers are best positioned to protect the PII they collect from their employees. But the *Sheffler* decision and the district court's decision in this case would turn those principles on their head, allowing employers to evade liability for failing to protect their employees' PII if they had not received an industry-specific warning of the threat of ransomware attacks. Such an outcome cannot be justified, particularly in light of the fact that ransomware attacks are a frequent occurrence and a well-known threat to businesses, so much so that the FBI, United States Cybersecurity & Infrastructure Security Agency ("CISA"), and the Microsoft Threat Protection Intelligence Team ("MTPIT"), among numerous other entities, have published guidance to help businesses avoid such attacks.[3]

---

[3] *See*, *e.g.*, How to Protect Your Networks from RANSOMWARE, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Nov, 3, 2022); Human-operated ransomware attacks: A preventable        disaster        (Mar        5,        2020),        *available        at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Nov. 3, 2022). The Court

Indeed, Ramirez alleged in the Amended Complaint that TPS could and should have implemented numerous specific measures to prevent against ransomware attacks based on this guidance made publicly available to companies. *See* ECF 1, ¶¶ 32-35. Ramirez alleged the foreseeability of a ransomware attack in light of the fact that TPS chose to retain and store the Social Security numbers and other sensitive data of approximately 76,000 current and former employee in an Internet-accessible environment, as follows:

- Given that Defendant was storing the PII of more than 76,000 individuals, collected since at least 2018, Defendant could and should have implemented all of the above measures to prevent and detect ransomware attacks. *Id.*, ¶ 36.

- By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure. *Id.*, ¶ 40.

- Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data. *Id.*, ¶ 43.

- Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised. *Id.*, ¶ 44.

- At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if Defendant's data security system was

---

may take judicial notice of government publications and website materials. *See*, *e.g.*, *Abdus–Sabur v. Hope Village, Inc.*, 221 F. Supp. 3d 3, 9–10 & n.3 (D.D.C. 2016)

breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach. *Id.*, ¶ 56.

- Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's file servers, amounting to potentially tens or hundreds of thousands of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data. *Id.*, ¶ 58.

- Plaintiff and the Nationwide Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Nationwide Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.. *Id.*, ¶ 101.

- Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Nationwide Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the PII of Plaintiff and the Nationwide Class, including basic encryption techniques freely available to Defendant. *Id.*, ¶ 102.

These allegations sufficiently allege that (i) ransomware attacks are extremely common, (ii) TPS should have heeded public warnings from the FBI, the CISA, and the MTPIT regarding ransomware attacks and (iii) TPS had cause to be on guard against ransomware attacks because it stored the Social Security numbers and other sensitive information of approximately 76,000 current and former employees in an Internet-accessible environment. As repeatedly held by other courts, any entity

17

choosing to store the Social Security numbers and other sensitive data of thousands of current and former employees in an Internet-accessible environment has cause to be on guard against a ransomware attack, regardless of the industry in which it operates.

Moreover, *Purvis* should not be read in such a narrow way as to limit its holding only to a limited handful of industries like the healthcare industry. For instance, in *Baker v. Parkmobile, LLC*, No. 1:21-CV-2182-SCJ, 2022 WL 3704003 (N.D. Ga. Aug. 19, 2022), another district court found that *Purvis* provided guidance as to how the Georgia Supreme Court would decide whether the Parkmobile parking app owed a duty to its users to protect their sensitive information from "a cybersecurity incident linked to a vulnerability that supposedly existed in a third-party software that it used." *Id.* at *2 (alterations omitted). Based on *Purvis*, the *ParkMobile* court found a duty of care in that case, even though it was outside of the healthcare industry and did not involve a phishing attack (or even a targeted attempt to gain the plaintiffs' PII).

Moreover, even if *Purvis* was to be limited to find a duty exists only with respect to those industries in which data breaches are extremely prevalent, it would surely have to extend to the retail and dining industries, which have both experienced countless data breaches, contrary to the district court's apparent belief otherwise. *See* ECF at 18.

18

Finally, the Federal Rules of Civil Procedure require only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *U.S. v. Baxter Intern. ., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). While the allegations must be sufficient to "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and cross "the line from conceivable to plausible," *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [a court] presum[es] that general allegations embrace those specific facts that are necessary to support the claim." *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted)); *see also Drummond v. City of Brunswick, Ga.*, 2005 WL 8157707, at *2 (S.D. Ga. Jan. 31, 2005), *aff'd*, 138 F. App'x 296 (11th Cir. 2005) ("At the pleadings stage of the proceedings, the Court was obliged to presume that Plaintiff's general allegations embraced the specific facts required to sustain this claim.").

Ramirez sufficiently alleged that TPS was aware of the sensitive nature of its employees' personal information and should have taken appropriate steps to protect their PII from being compromised. The district court should have allowed his negligence claim to proceed.

19

## II.    THE DISTRICT COURT ERRED IN DISMISSING APPELLANT'S BREACH OF IMPLIED CONTRACT CLAIM.

Under Georgia law, an implied-in-fact contract is one not created or evidenced by distinct and explicit language; it is inferred by the law as a matter of reason and justice. *Classic Restorations, Inc. v. Bean*, 272 S.E.2d 557, 562 (Ga. Ct. App. 1980) (citations omitted). Such contracts arise from the nonverbal conduct (a "continued course of dealing") of the parties. *See J.M. Clayton Co. v. Martin,* 339 S.E.2d 280, 282 (Ga. Ct. App. 1985). For this reason, "it is a question of fact whether there existed an implied contract . . . which must generally be left to the jury for determination." *Tatum v. Moss*, 198 S.E. 814, 815 (Ga. Ct. App. 1938).

Here, Ramirez alleged that he provided his PII to TPS as a condition of his employment. ECF 1, ¶¶ 1, 39, 61, 126-27. In exchange, TPS accepted the responsibility and duty to keep their PII safe. *Id.*, ¶ 127. TPS became a party to those implied contracts when it took control and possession of Appellants' PII and agreed to be bound by its own privacy obligations. Each party understood the nature and content of the arrangement.

The district court held that more is required to state a claim. Citing *Purvis*, *Sheffler*, and *Longenecker-Wells v. Benecard Servs. Inc.*, 658 F. App'x 659, 662 (3d Cir. 2016). In *Longenecker-Wells*, the Third Circuit found that the plaintiffs' breach of implied contract claims against their employer failed because they did not plead any company-specific documents or policies from which one could infer an implied

contractual duty to protect the plaintiffs' information. But other courts have taken a different approach. In another data breach case in which employees' PII was disclosed to unauthorized third parties, the court denied the employer's motion to dismiss the employees' breach of implied contract claim, finding that by requiring and obtaining the employees' PII as part of the employment relationship, the employer "evince[d] an implicit promise … to act reasonably to keep its employees' PII safe." *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017). The court explained, "[w]hile TransPerfect may not have explicitly promised to protect PII from hackers in Plaintiffs' employment contracts, 'it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently.'" *Id.* (quoting *Castillo v. Seagate Tech., LLC*, No. 16 civ. 1958, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016)); *see also Bowen v. Paxton Media Grp., LLC*, 2022 WL 4110319 (W.D. Ky. Sept. 8, 2022) (rejecting employer's contention that there was no implicit provision in its employment contract requiring it o protect its employees' PII); *McKenzie*, 369 F. Supp. 3d at 820-22 (same).

Similarly, in *Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174, at *9 (E.D. Mo. Aug. 3, 2021), the court reasoned that the plaintiff in an employee/employer data breach case "plausibly alleged the existence and breach of

21

an implied-in-fact contract requiring [the employer] to adequately secure its employees' PII." The court further recognized that "[w]hether such a contract actually existed is a question of fact inappropriate for resolution at the motion to dismiss stage." *Id.* The same is true here, and the district court should not have dismissed Appellants' claim at the pleading stage.

## CONCLUSION

The district court erred in dismissing Appellant's negligence and breach of implied contract claims. This Court should reverse these rulings and remand this case to the district court for further proceedings.

Dated: November 4, 2022                    Respectfully Submitted,

                                           */s/ John A. Yanchunis*
                                           John A. Yanchunis
                                           Kenya J. Reddy
                                           **MORGAN AND MORGAN**
                                           201 N. Franklin Street, 7th Floor
                                           Tampa, Florida  33602
                                           Tel: (813) 202-7185
                                           Fax: (813) 222-4738

                                           Counsel for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). This brief contains 5597 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f). It has been prepared in a proportionally spaced font using Microsoft Word in Times New Roman, 14 point font.

*/s/ John A. Yanchunis*

Counsel for Plaintiff-Appellant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 4, 2022, I electronically filed a true and correct copy of the foregoing brief with the Clerk of the Court using the CM/ECF system, which will send notification to all attorneys of record in this matter.

*/s/ John A. Yanchunis*

Counsel for Plaintiff-Appellant